This is the Landersman case. Let's see. Mr. Sears. Pleased to hear from you, sir. Good to have you here. Thank you, Your Honor. It's good to be here. Did you try this case? I did, Your Honor. So you were appointed in the... Were you appointed in the district court? I was appointed in the district court, Your Honor. Well, it's good to have you. Thank you, Your Honor. Be sure you tell us who you're representing. I represent Defendant Lee Hall, Your Honor. Okay. It's kind of a... You got to pull that microphone closer to you. So you... I call this the Landersburg case. Are we arguing both these cases now, then? We are, Your Honor. Okay. They were joined for the purpose of argument. I'll be arguing on behalf of Defendant Lee Hall. You're just arguing for Mr. Hall? Yes, Your Honor. And then your colleague, Mr.... Citrenberg, Your Honor. Citrenberg is arguing for Mr. Landers. That's correct, Your Honor. Yes, sir. All right. Thank you, Your Honor. May it please the Court. On October 20, 2014, Lee Hall began his federal trial believing four things to be true. The first, that the court's Brady sanction for the government's late disclosure of Brady information. As a result of that, the court had issued a sanction finding as a fact that the items Mr. Hall helped procure in this case, suppressors, were priced reasonably. Second, he had proved as an uncontested fact, through a stipulation with the government, that he was told by a co-worker, Sterling Gill, who was a special assistant for counter-narcotics in transnational criminal organizations, that the need for suppressors remained unfulfilled. Third, Mr. Hall believed that the court would take all inferences in favor of him regarding any of his handwritten notes memorializing meetings and conversations that were destroyed as a result of the government's negligent handling of evidence. What are you reading from? Anything the court entered or just your description? Just my description. Word reading doesn't matter there. I mean, as you're relating this to us, are you relating this from the court's words or from your understanding of the court's words? My words and I'm paraphrasing portions of the court's words. These are your notes you're referring to? Yes, Your Honor. Understand, I'm not criticizing from looking at your notes. I just think it's important to see what the judge said and what the judge did. Correct, Your Honor. So you're first off here, you're arguing about this Brady issue. Well, Your Honor. Or one of the Brady issues. I'm arguing about four issues primarily that the judge decided pre-trial about how she was going to view certain evidence at trial and that we believe denied Mr. Hall a fair trial because we relied on the court's instruction to us. Did I stop you before you gave your fourth one? Yes, Your Honor. What was the other one you wanted? Well, the fourth one was not so much a decision the court made, but Mr. Hall believed that the court would not rely on evidence that was not admitted at his trial to convict him. When did she actually find him guilty? She found him guilty. Was his trial first or second? His trial was first, Your Honor. It was two and a half days. When did she find him guilty? I believe it was October 29th. No, no, no. At the end of his trial before the second trial started? Because didn't she announce your guilty order to follow kind of thing? No, Your Honor. She reserved a finding at my trial, Mr. Hall's trial, Your Honor. And didn't make any, didn't announce any decision? No, Your Honor. So, therefore, that's why you think it makes it either likely possible or certainly not excluded that she used evidence from the second trial in reaching her determination of guilt on your client? I do, Your Honor, but I can also point to a specific piece of evidence. Oh, no, no. I know that. I know that. She dealt with that. To an extent, Your Honor? No, no. She did deal with it. You don't think she satisfactorily dealt with it? Correct. Correct. That would be my position. Your Honor. Were there consecutive weeks? Is that where they were at one your week and then the other one came up the next week? Correct, Your Honor. At the conclusion of the second trial. Both of the bench. And y'all got a severance. Well, y'all got a break getting a severance. Why didn't they just try them together? Well, so, Your Honor, originally we raised an issue with the court that my client, Mr. Hall, may testify at the trial of Mr. Landers. Well, I know that. He said he would. You got a severance. And then he double-crossed the court. No, Your Honor. That's not accurate. He wouldn't testify. Your Honor. Then I'll take a Fifth Amendment. Your Honor. I mean, yeah, I think you really got a break getting a severance trial. That's an important issue for me, Your Honor, because of the insinuation that... No, I'm not. I just looked at this. But, Your Honor... It's one indictment. I understand, Your Honor. We... Co-conspirators. Correct, Your Honor. We advised the court two weeks prior to trial that we had changed that position and the cases could be rejoined. The court, on its own motion, decided that it wanted to keep the cases severed because of the class... I've solved a lot of conspiracies in federal court as a prosecutor and as a defense lawyer. And every one of them had a severance motion and never had one granted. Never heard of one being granted. And we withdrew it, Your Honor, actually. And I can't tell the court that... So you got... You're the first. I was the first. Well, I granted one as a district judge one time. Well, so I think Judge Brinkman would say that he did it one time also and not to be done again, Your Honor. But it did create for a confusing record and I think that's part of our issue in this case is it's unclear exactly how the court resolved... What do you think her single greatest error was? I would tell the court that I believe her single greatest error was going back on the stipulation, on the sanction that she issued at the beginning of the trial, which was that these particular suppressors that were involved in this case were priced reasonably. And you think that affected your strategy and how you tried the case? It definitely did, Your Honor. It affected what type of cross-examinations we did. It affected a lot of what emphasis we did on cross-examinations and whether to call other witnesses because we believe that that issue was put to bed. And I think the only reading of the court's statement as to that issue put that issue to bed, that it was over. They were priced reasonably. What do you think about her statement, I think, at the end when she said, well, I meant that if it was reasonable under the circumstances or whatever that. I mean, they were reasonable functioning pieces. Correct, Your Honor. Do you think that that caveat addition takes care of the problem? No, Your Honor. Why not? Because that caveat was not told to us prior to trial. Well, does it do it? I mean, in the scheme of the theory of the case, does it? You know, I could find the words. You know what I'm talking about. She goes, but that was if they were working. Correct. What she told us a year after the trial, after filing her memorandum of opinion, was that sanction, of course, depended on whether these things were usable or were useful. I take issue with her finding that they were not usable or useful, but I don't think that it was fair to attribute us to have that knowledge before trial. I think that was a post-trial justification for not upholding that sanction. I think the judge, to be honest with you, may have had buyer's remorse about that. Well, she said, of course, assume the suppressor would actually meet the standards for flash and sound suppression. Correct, Your Honor. Well, I thought you might have an argument that even that doesn't understand the scope of the argument.  Sorry, Your Honor. That maybe they don't have to be made. You get my drift? Because I want to be careful where I go with it. Absolutely, Your Honor. But you're not making it, though. You're not saying that. I'm not saying it here. It will be said in another courtroom, Your Honor. Okay, okay. I believe. You don't have to address it. Understood, but I can address it in this courtroom, in this context, Your Honor. And this goes into a third issue we raised in this, which was about the admission of the testing that was done, highly prejudicial evidence regarding the testing in a situation where there were no known standards. I don't want you to overstate that if you're going to get into our second hearing on that. Understood, Your Honor. Lastly, as to this issue about the due process violations and whether you had a fair trial, it was all four of those issues that we raised. Are all your issues tied to constitutional questions? You're talking about fair trials and due process. The first issue where I raised the four errors the Court made that affected our right to a fair trial, which would be the sanction, which would be not. You're tying them all to constitutional issues. I am, Your Honor. So all the issues you raise on appeal are tied to the constitutional matter. In my first argument, Your Honor. My second argument regarding whether or not the government met its burden that my client stole money without authority, I don't think that's. That's a sufficiency of evidence. It's a sufficiency of evidence. It's a sufficiency of evidence and that's as to the second count. Correct, Your Honor. So the issues on the first count are all due process, constitutional? Yes, Your Honor. It's our position. But let's get that straight. By that you mean what looks like trial errors or errors in trying the case, those errors which might be argued as to evidentiary matters or misusing stipulations, you just think you aren't limiting that to just admissibility and trial type errors. Would you say, I don't know, are you saying they're so egregious they rise to the constitutional level? I am, Your Honor. I say they fatally infected the trial, which I think is the standard in this. But it is that the judge made errors that were just like normal trial errors we would review. But in this case, you think those type of errors are so severe that they just infect the case in a way. That's exactly my position. These aren't 404B type issues. And Brady issues are prejudicial. Yes, Your Honor. And we raised that issue. We sought dismissal of the indictment on the morning of trial. And you preserved them all. There's no question that you preserved them all. Nobody claims you waived anything, right? No, not that I know of, Your Honor. Do you think the government would be in a better position if this case had been tried to a jury? I think we'd be in a better position now had it been tried to a jury. No, no, no, no, no. I'm talking about the government.  Maybe there could be some claim that this may have been errors, but they were washed out by what the jury did. Do you think or not? I probably would say the opposite, Your Honor, if I'm being candid with the court. I think the standard when you're in a best trial. I thought you wouldn't because I thought you would say the government's in a weaker position because not only did the judge make these errors, then the judge was the fact finder after having made these errors. You don't have to make that argument if you don't want to. I'm just trying to understand your view of it. And I appreciate that, Your Honor. And I do think that's true. I did raise that issue in the brief that I think by the time we addressed these issues, it was so long after the court's oral verdict that it was almost impossible to move on. Well, the oral verdict was guilty. The oral verdict was guilty. And you get a verdict of guilty in a criminal case, the facts were taken in the light most favorable to the prosecution. Correct, Your Honor. In a review situation. I want to pick one here. Are you saying that our – is your argument that the facts here are taken in favor of – should be taken in favor of the prosecution or somehow circumscribed by the fact that the judge sat down and worked through this thing and wrote a 40-page opinion explaining how she got to this guilty verdict? Because she's the one that said guilty. Correct.  And wouldn't have written 40 pages. So you're saying that the judge has undermined the verdict by trying to explain it? I do because of the errors. Right. That's what I think. That's what you're arguing. Correct. That is what I'm arguing. Undermined by telling us the parties that she relied – You're doing a pretty good job of your client, too. I mean, I say that. I appreciate that, Your Honor. I do want to address count two, which is the theft of government property. And it's our position – You've got that red light on. I'm sorry, Your Honor. Why don't you go ahead and tell us about count two? Thank you, Your Honor. We're not going to cut you off. I appreciate that, Your Honor. Regarding count two, Your Honor, which is Mr. Hall's alleged theft of government property, it's our position, distilled to its simplest form, is that the government failed to prove that charge legally because there's only one person who could have authorized this expenditure, the United States government. That person was the contracting officer on this contract that CACI had with the Navy. That individual was never called by the government. We know that that individual did authorize it because the money did transfer, and there's plenty of testimony that it could not transfer without his testimony. It looks to me like the evidence was overwhelming on that point, against you. Against Mr. Hall, Your Honor. Against you. There's all kinds of evidence of what you all did. Well, there's evidence. There's certainly evidence that Mr. Hall was involved in the transfer of the money, but the initial transfer of the money from the Navy to CACI was not authorized by Mr. Hall. It was authorized by an individual named Ted Schellenbarger, who was not a co-conspirator by stipulation with the government. If you look at the document, he's the one who transfers the money. Not only that, Mr. Schellenbarger was aware of the use of that money because he was at a meeting with CACI and NAVSEA when this whole thing started, where one of the NAVSEA witnesses actually testified that Mr. Schellenbarger was telling her about this procurement for suppressors. But more to the point, Your Honor, I think the most crucial point here is that the government could not have proved this case without the contracting officer coming into court and saying, either I didn't approve this or I approved it because I was tricked, I was deceived, I didn't understand what was going on with this procurement. And they never did that. He was on their list, but he wasn't called. And it's our position, legally, under the case law in this circuit, you have to prove that it was done without the authority of the person who had the authority. And on that point, the government didn't present any evidence at trial at all. Thank you, Your Honor. Thank you. Now, Mr. Schellenbarger, you're going to argue before we get to the government, right? Did you represent Mr. Landersburg? Yes, Your Honor. Landersman. Landersman, I'm sorry. Yes, I'm sorry. Good morning. May it please the Court, I want to pick up on where Your Honor left off, where Your Honor left off on the – there is, particularly as to Mr. Landersman's case, You've got to pull that down to slow down in your speech just a little bit. Yes, Your Honor. There was a benefit to the explanation the Court gave. Because we want to hear and understand what you're saying. I'll speak slower. I apologize. There was a benefit with respect to Mr. Landersman that was found in the Court-specific ruling. When we came back to the Court on the motion to better understand the basis of the Court's ruling in light of some of the judicially noticeable evidence and in light of some new evidence that we brought to the Court's attention, the Court basically said, here's why I ruled the way I did. I ruled the way I did because you failed to prove, or the evidence failed to prove, that all of those 10,000 hours that you had worked prior to 2010 was related to the contract in this case. And this went – and so she said, that's why I'm finding you guilty. And that went to the core issue of the sanction, because this sanction was about whether the suppressors were priced reasonably. And she – This is the strongest argument you have. I believe it's among the strongest arguments we have. I also believe there's a strong argument on the failure to admit Hull's testimony in our case under – as an absent witness because he had previously testified, and she didn't admit that testimony at that hearing. But this is certainly among one of the stronger arguments, and so I think it makes sense to start with it. And it was especially prejudicial, and this is a little – the procedural posture that was brought up in severance is a little confusing, but even though Lee Hull's trial started on the 20th and most of the evidence for our trial started on the 28th, our trial technically actually started during Mr. Hull's trial on the 21st when there was one witness, Trilhas, against whom – who also offered testimony against Mr. Landersman. And in that – and then that was the one witness that began our case in Jeopardy! Attached and then the case commenced – recommenced on the 28th against us. And that is just Jeopardy! Attached at that point, and that's how it began. But with that witness on the 21st, and this is really important, he was specifically asked by us if the contract calls for one unit and it took an hour to manufacture and 50 hours to design it, would billing for 51 hours be an unreasonable amount of labor? And the court said it was not going to permit this question about whether previous hours could be counted and contributed to the relevant cost of the suppressor because she'd already made a factual finding. It was part of the sanction that the labor that had gone into this and the amount of work that had gone into this was irrelevant. And then we find out a couple hours right before the trial is going to end, on the last day of trial, that she's taking the sanction away. And importantly, once Mr. Hull's trial ended, we met with the government and we agreed to call off almost all the witnesses. Your argument is, if I understand it, is pursuant to a sanction she'd imposed, she limited testimony that you thought would help make your case or help make your defense. And then you found out, after the fact, she was ruling against you because there was a lack of evidence on that point. I'm sorry. Lack of evidence on that point, too little evidence. So in other words, she did not follow her own sanction, but during the course of the trial, she affected your trial rights by imposing that sanction. Exactly, Your Honor. That is exactly our complaint. And that began with the very first witness. And then after that happened, we had seven days to prepare for the reign of our trial, and we understood that was the sanction. So your trial was in kind of a recess. It was in recess for a while. For seven days while they were finishing. For a week, yes. Paul's trial, co-defendant's trial, co-conspirator's trial. And then they started, then you took up, started taking evidence again. Yes, and it's a regular posture. It's like you took evidence and you started your trial, you took evidence and the judge said, come back next week and we'll finish this thing. That is exactly what happened, Your Honor. And why was that lack of evidence so critical to you, do you say? Well, because the judge said so. Because she said, and this is in her ruling. No, no, no, unless you can read it and make the point directly from that. Just tell me why. Because she said you failed, the evidence just isn't there for me that shows that these, however many thousands of hours and however many tens of thousands of dollars were spent previously were part of this contract. The evidence merely showed that he was working on an AK-47 suppressor previously. But maybe this was for a different AK-47 suppressor contract, not that a guy who's not in, you know. Don't add all that editorial comment. Okay. So the point is, she said you haven't shown that you should have gotten this money because you put in the effort to get the money? Is that it? And then she said because what little you have in the record doesn't necessarily support your argument. Correct, and she actually said, well, all of those, and we tried to reopen the case. We tried to say we have this evidence, here's an affidavit, here's the testimony, here's how we would have proven that just to show this isn't harmless. This is putting all the technicalities of it aside. It was the truth. We wanted to put that truth in front of her, and she said that's not evidence in the case. You had your chance. How did she explain your concerns about the stipulation? How did, when you say, Your Honor, but you, not a stipulation, but a sanction, you told us how this case was going to be tried, and she said what in response? I believe she said that it was unreasonable for us to rely on that sanction in that way, that we should have simply anticipated that the ruling was conditional, even though she later said. Conditioned on what? Conditioned on the devices working, and we're going to address that in the next courtroom. Right, right, right. Now, these, you all talk about suppressors all the time. They're kind of like silencers, right? Yes, there was. Are those synonymous? They are, they essentially mean the same thing, Your Honor. That's what I thought. No, they are the same thing. I think the technical term is suppressor, and that's why we're using that term. But they are the same thing. A suppressor suppresses the noise and or the flash. Correct. That's what people generally call a silencer. That's very accurate, Your Honor. Yes, that is, those are the two things. And so because the judge basically said the burden or whether we should have recognized this sanction, she specifically said, although I didn't say it. Even though the expert said they didn't work anyway. Well, one expert said they didn't work, but there was a different individual. I believe this is. Well, the expert said it didn't work. Would we take his testimony? There was also. It was in favor of the government. It didn't work. There was also the testimony of a witness for us who indicated that. But the verdict was guilty. It was not guilty.  All I'm pointing out is that there was contrary evidence in the record about how sometimes how much you want them to work and how you want them to work isn't consistent with this particular type of testimony. Can you finish your thought for me? A minute ago you started to say that the district court said, although I didn't say it. Although I didn't say it, it was, quote, unquote, obvious that the device had to work according to Davis' testimony's version of working in order to access the sanction. And there is simply no way we could have ever anticipated that obvious, is how she described it, condition that was attendant to the sanction. Did you say that to the judge at that point? In some manner of speaking, Your Honor, I don't know if it was exactly that way, but in some manner we did object to it on those grounds. We said we were highly prejudiced. We did object contemporaneously. We objected repeatedly that we were highly prejudiced. We called off almost all our witnesses. I can tell you I can't even how many hours I spent tuning all these witnesses to get them all there for trial to argue this issue. At the time she introduced the sanction, at first, before the case was tried. Yes, sir. Did you anticipate in how you were going to argue this case that had she added that caveat she added at the end about working, would it have caused you any concern then? Well, certainly we would have. I'm dancing around it just a little bit, but do you understand my question? When she announced the sanction, if she had said the sanction is conditioned on the following, it would have dramatically affected what we did. First of all, I don't know. I don't ask you that. Oh, I'm sorry. I said would that have dramatically impacted on how you were going to go about your theory of the case. It's slightly different. If you could help me understand, Your Honor. As to workability. Did you anticipate ever that, did you think from the start of the trial that workability was not critical to your defense? We considered it to be of some limited relevance, but in light of her sanction.  I'm dancing around this just a little bit, because her caveat was that's conditioned on my saying they work fine and all that. Was it that fact that caused you concern, the workability issue, or the fact that she added any condition? Now I understand the court's question. I apologize. The fact that she added any condition. Because we, in preparing for having to prove that issue, and the court has the evidence we would have put on, which she ultimately determined was the dispositive evidence that we needed to put on, we didn't. And so to answer your court's questions directly, yeah, it was that. So I believe I'm out of time. Did you put on any defense witnesses? We did put on defense witnesses, Your Honor. Yes, we did. How many? I don't recall the exact number. You tried to call Mr. Hall. Yes. But you couldn't get that done? Yes. We called at least one witness, I recall, about hours that had been worked, although there was one witness who was called about some of the work that had gone into the suppressors. Again, we were trying to adjust on the fly in light of this new reversal, and so you have like 30 minutes to try and figure out how you're going to do the case in light of you just find out the case is new. So we did call a witness. A lot of things change during the course of a trial. I mean, that happens all the time. That's true, Your Honor. Lawyers have got to be on their toes to be able to adapt. That is true. However, I think in this context of this case where she had already cut off this questioning, we had already called off witnesses, and we had prepped all our witnesses based on that sanction, I think imposing a burden on us to adjust on the fly with minutes to prepare an entirely new case would violate due process, particularly whereas previously we did. Are all your issues constitutional too? No, Your Honor. I believe with respect to the admission of the Hall's prior testimony, I believe there are some federal rules of evidence issues, and I think those would be. As to what? There are some federal rules of evidence issues as to admission of prior testimony and whether it was proper under 804. Prior testimony. You wanted to introduce prior testimony. Correct. That's right. Mr. Hall testified at a hearing. Correct. Before the trial, and you wanted to put that evidence in. The judge said no. Right. You're claiming that's error? Claiming that is also error. That's an evidentiary straight-up error that we review for abuse of discretion. Accurate, Your Honor. That is accurate, yes. The constitutional issues are de novo. The federal rules of evidence are abuse of discretion. And as to that error, I believe that would be a different standard. Of the four, I think there were four points that Mr. Sears stated. Are you only commenting on one of those? What we have adopted is the court's honor brief. We adopt and embrace. You adopt each other's arguments? We adopt each other's arguments. So I am embracing his arguments. No, I can see how the first one impacts directly on you. Tell me how the other ones. It's just because the evidence came in. Is that direct an impact on you? It's because of how the cases charged are. It's charged as conspiracy. So anything that would tend to show that would hurt you. Yeah, anything that tends to show he's innocent or that there was a problem in his trial would tend to affect our trial. Because the only charge, the only charge, as to Mr. Landersman is count one, conspiracy. And just like any error on count three, object three would affect objects two and one because it's conspiracy. Any evidence? What did he count? Objects. There was a count one for a conspiracy, period. Yes, I misspoke. Object three of count one. Object three. Well, what's that got to do with it? All you have to do is prove one object. That is true, Your Honor. Do you agree with that? I do agree with that. Well, and the judge went through each object carefully and all that, analyzed it. But once you got an, if there's an object of a conspiracy, that's what the statute says. They can charge 20 objects. They got to prove one, that there was an object. And they don't have to prove it was accomplished. They just got to prove that there was a conspiracy to accomplish it. The agreement is what's unlawful. I agree with that. I don't understand why you're arguing about whether they accomplished count or object two or object one or object three. There's an object, one object is enough. If it's a conspiracy to commit mail fraud, end of story. All I was suggesting, Your Honor, and this will be my very brief and closing remark on this, is that to the extent there is evidence and to the extent there were errors that affected whether the evidence suggested there was a conspiracy at all, whether there was a fraudulent, unlawful agreement. To commit a crime, an offense against the United States, an offense. An offense. But to the extent there was evidence that showed there may not have been an agreement because one of them, there may not have been a criminal conspiracy. But that's what that first count says. The violation of the law is 371. That's a conspiracy offense. Yes, Your Honor. The violation is not mail fraud or unregistered firearms or being in the firearms business. It's a conspiracy. That is correct. That's all there is to it. That is correct. And, again, just to briefly make a point, and I will step away after this, is that evidence that undermines, that tends to show, or errors that would tend to undermine showing of an agreement would tend to undermine the entirety of count one. And so that is the point I wanted to make. Thank you. Thank you. Appreciate it. And you have saved some time, too. You fellows have got some more time. Mr. Parker. Good morning. Good to have you, sir. Thank you. Good to be here. With me also is Ms. Patricia Haynes, my colleague. She'll be arguing the classified portion. At the outset, this Court should affirm the District Court judge's guilty verdicts following a bench trial in which the evidence proved that Lee Hall orchestrated the unauthorized procurement, an interstate shipment of 349 unregistered silencers from Mark Landersman, who was not licensed to manufacture and sell firearms, and who was the brother of Hall's boss, David Landersman. And at the outset, I'd just like to say that the third conspirator in this case, and it just so found, was David Landersman. A few things I'd like to clarify based on what counsel said. He was a brother of this convicted defendant of Mark Landersman, the supervisor of Lee Hall. At the Department of the Navy. At the Department of the Navy. A few things I'd like to clarify. But you haven't pursued charges against him. We did, Your Honor. You dropped charges against him. We did, for a variety of reasons. Did you all drop them or did the judge dismiss them? She did dismiss it because she dismissed the case because he was ill. He wasn't physically able to be correct. He tried. Right. And we eventually decided not to go forward and appeal the decision. So I should clarify that.  Sterling Gill, the person on who defense, especially Mr. Hall, relies for the suppressor requirement. What Judge Brinkman knew was that she was the S.A. for C.T.O.C.T.A. Now, in the brief and in this court, Mr. Sears has referred to her as the special assistant for counter-narcotics and transnational criminal organization. That evidence didn't come out of trial. No one was asked that. The only thing on that org chart was S.A. for C.T.O.C.T.A., that she was a GS-13. Do you think the judge made any errors? Yes, I do think the judge made some errors. What errors do you think the judge made? You don't have to go through all of them. They laid out four. I'd like to focus on those. Do you think that sanction against the government that she later modified with condition, that was an error for her to modify it at the end? Okay, the judge has asked me two or three questions. I'd like to answer the first one. Do you start? That was, did she make any errors? I thought she made an error when she went back and dismissed the second objective of the conspiracy based on the fact that she had- All right, stop. Did she make any errors that they say are errors? Not in our opinion, Your Honor. They didn't?  The court does not believe so, arguably in that. Well, she made an error. I'm sorry. She did make an error in considering the guts email, but she went back and modified that. Let me ask this then. Do you think she made an error by adding that condition on the sanction? Our argument is that this court should defer to a court's interpretation of its own rules. How would we reasonably do that? Well, Your Honor, she said that she would find that these suppressors were valued at $5,000, I think at the outset, considering the conditions under which they were made. Our position is that the court misinterpreted Mr. Roddell's statement, which was a suppressor would be worth $5,000 if it was untraceable and totally rogue. So wait a minute now. Totally what? Rogue, R-O-G-U-E. And the judge said to me, isn't that what these are? And I said, yes, Your Honor, but if that's what they are, I'm not so sure why we're in court. Because if they're totally rogue, they're illegal. And we maintain that. And the judge heard the testimony, and in the trial, Mr. Roddell stated, I wouldn't pay $5,000 for a canister made of gold. So he was very clear about his position on whether these suppressors were valued at $5,000. But if I could further answer that question, the cost of the suppressors, the violation here goes to false representations. The cost of the suppressors, even if the judge fully credited that as them being reasonable, those were in two of the 25 overt acts there was a reference to the value of the suppressors. So even if the – How many of the overt acts did the judge find were proven? She made no finding with respect to each and every overt act. But the point being that our case did not rise and fall on whether the suppressors were valued at $5,000. There were a number of misrepresentations made in the course of this procurement. Mr. Hall testified that – I mean, I'm sorry, Mr. Hall made representations to Kaki. Yeah, but I'm going to go back to my – Sure, sure. You don't think that was an error in the way that she handled that sanction and then later modified on the record what she meant by it? She could have been much clearer at the outset. The government agrees. So she wasn't – why does it have a difference? She wasn't – you may say you didn't need it anyway no matter what happened. Correct. But she was inarticulate? She was imprecise? What was she? I hesitate to refer to the judge as inarticulate. But I think perhaps she could have been more precise, but she knows what she meant by her ruling. I know the question isn't what she – she knows what she meant by it. It's whether or not the defendants know what she meant by it. Yes, that's right. But the question also is whether they were prejudiced by the ruling, and we argue they're not prejudiced by the ruling. Well, that's a separate question. Okay. I just want to first ask. It seems to me that's one of the most glaring possibilities for error in this case. It may not matter when it's all said and done. Correct. But the government's position is that wasn't an error, but she did. Your Honor, we hesitate to say it's an error. I mean, she could have been clearer. I mean, I guess we will concede that she could have been clearer in saying that provided they work. But she clearly said that considering the conditions under which these suppresses were made, she would find that they were valued at $5,000.  They had to suppress. Well, Your Honor, that's a good question because for ATF purposes, for the purposes of determining whether they were a firearm, they did work. You just have to suppress at any level. But these were Navy weapons, and by the defense witness's own admission, they had to pass by crane. NAVC's crane location. There's a location in crane. I think it's Indiana. I may be wrong about that. But they have a testing facility there, and weapons to be used by the Navy have to be approved. These were by Navy. You're talking about like SEALs or something. I'm not sure by whom they were going to be used. But my point is they had to be approved by crane. And even Mr. Lowell, Rodney Lowell, admitted that with respect to the DAC proposal months earlier, I'm sorry, years earlier, that that proposal, that prototype that supposedly was being produced by Mr. Landersman, would have had to have final approval by going through crane and being tested. So that's what would have had to happen in this case. And Mr. Hall appreciated that. He had to suppress the sound and suppress the flash. Suppress the sound by so many decimals and suppress the flash. And it failed the Navy test, the Navy requirements. Like a bunch of junk. For purposes of the Navy, it was. They were useless. That's exactly right. The suppressors were useless to the Navy. Excellent on the Brooklyn Bridge. What about the question of Hall's, the inferences to be drawn from the destruction, since the government destroyed the Navy, the Navy destroyed the notes, the judge was asked to deal with that. Correct. And she indicated she was going to draw inferences in Hall's favor. Correct. Because Hall, I think he said, Well, I have my notes, and on those notes that you took from me and destroyed government, it was information that completely corroborated, and this is his view, what I said. I need those notes. Where are they? The government goes, Well, we took them, but guess what? We destroyed them. And the court, in response to that, said, didn't she say she was going to draw the inferences in favor of Mr. Hall? What she said, Your Honor, in quoting, Hall will be permitted to testify. And if he says that he has notes, I'm going to accept that. And Mr. Hall went before that court and stated he was going to testify. And he didn't testify. Excuse me? He did not testify. He did not testify. So that was conditional. He was going to testify, and he failed to testify. Correct, Your Honor. And he testified at the hearing, and they claim that they should be able to put in the testimony from the hearing. Precisely. And why didn't you let him do that? Well, because the judge, using 403 analysis, decided, and the judge, and this is where we disagree with Judge Shedd to a certain extent and agree with Mr. Sears, this case, as a bench trial. Who do you agree with? I think he's arguing against me. I'm not, Your Honor. Just on this limited point. He's arguing against me. Just on this limited point. We don't always be what we say. Please let me say this, but I think I've united the parties in front of you. Mr. Sears is a... But we do believe Mr. Hall. Yeah, I'm sorry. I'm sorry, Your Honor. No, we know he said he agrees with me. He doesn't agree with me, but he agrees with Sears. He agreed with... All right. Only on the one point of whether or not the government is better off, this is a bench trial versus a jury trial. This is a bench trial. In many of the cases cited by the defense... Well, why do you all agree to the bench trial? Well, Your Honor... You don't have to. We don't, Your Honor. It is. No. Why do you agree to the bench trial? If you're going to come up here and complain that you shouldn't agree, you don't have to agree. The defendant can't get a bench trial. Well, we think... You've got to go along with it according to the rules. Well, we tend to try to... Because the judges want you to. The judges want you to over here to get the rocket docket working. That's correct. That's very correct. That's right. Didn't the district court actually say that she did draw the inferences in favor? So she, in fact, did draw inferences in favor of Mr. Ross. She said that from the bench a couple times. That's correct, Your Honor. But she also, I mean, she made it clear that he would have to testify. And this ruling has to be consistent with the federal rules of evidence. Every defendant will be writing notes saying, I don't want to testify. Just admit my notes. Normally, if what the defendant is saying, if it's relevant, he's stuck with or she's stuck with. If the defendant is stuck with what they say, why wouldn't they be able, if it's under oath, the government could cross-examine him at the hearing. So why wouldn't you just let them put it in? Your Honor, that was a call that, within her discretion, she decided not to make. I know, but I'm asking the government, why wouldn't they say, no objection, put her right in? Correct, Your Honor. That's right. You could have done that. In terms of what? I'm sorry. You could let them put in Paul's evidence from the testimony at the hearing. You could have let them do that. And then you wouldn't be up here arguing about whether it was error or not to keep it out. That's correct, Your Honor. We said it. We plan on calling. We didn't say, we said, if you put it in, we just want to alert the court that we're calling rebuttal witnesses. And the judge said, I'm not opening that can of worms. No. But you're saying that's a discretionary call. That's correct, Your Honor. And that's reserved to her when she conducted the trial. So it's not error. It is not error. But what if we think it's error? Is it harmless? It's harmless, Your Honor. Pardon? If it's error, it's harmless? It is harmless, Your Honor, because even if you look at the substance of what Mr. Hall said in his hearing. Lawyers are experts in harmless error. You know that? Every time there's an error, it's harmless. Because nowhere in his testimony did he explain that he had authorization to use money that was allotted for studies and assessments for weapons. And Mr. Hall was very aware of the fact that there were limitations on this money. On August, I think it was August the 13th, in an e-mail, it was only after Mr. Hall assured Dave Nugent and the DonAA, the Department of Navy Assistant for Administration, that these funds would not be used for Navy intelligence programs or Marine Corps intelligence programs, that the DonAA authorized approximately $2 million of that money. So Mr. Hall was well aware that this money had restrictions in terms of how it could be used. And nothing in his notes said that I had authorization to use this money for weapons. Nothing in his testimony said that. He said we went through his boss. We went to Ms. Lachino and said we had another use for that money. But he never said what it was. He said that he spoke to Mr. Martinage and gave him the update on the requirements, but never said anything about using this money for the purchase of suppressors. But I don't want to leave this point first because the judge's order, do you agree that the judge's order itself did not in any way condition on Hall's testimony? The government took the position that the inference would be drawn if Hall testified, correct? Correct. But the court didn't order it that way. Well, the court stated in ruling from the bench that Hall would be permitted to testify. No, I think if I'm looking at it right, ordered that the court will draw all inferences in favor of defendant Lee Hall regarding any of his handwritten notes memorializing meetings and conversations that were destroyed as a result of the government's negligent handling of the evidence. Okay. Isn't that her order? And she says she drew those inferences, Your Honor. Then I thought the government took the position that that was conditioned on Hall testifying. Well, I'm reading what the court said at JA-260. Well, I'm reading what the order said, I think. And it may have been somewhat contradictory, but she also, as Judge Thacker noted. You're reading from the transcript of the ruling at the motion. The judge is reading from the order she entered. Correct. Well, the order controls, doesn't it? I would imagine so, Your Honor. Yes, it does. Well, on what the defendant's lawyer knows, he would know what she said in the transcript. Correct. They were present. That's right. And as Judge Thacker noted, she also held and ruled that she drew those inferences. She what? She drew the inferences. She said she drew the inferences. She did say she drew the inferences. She said she drew the inferences. Correct. She said she was going to do. Correct. I'm sorry. Go ahead. She drew the inferences. I'm having a little trouble understanding what she would know the information was. But was it from the earlier hearing? From the motions hearing. That's correct. But in that he testified, he basically testified people knew about that. You said he didn't go far enough? I'm sorry. What did he testify in that hearing? Didn't he testify? I had notes which would explain higher-ups knew about that, that they knew what I was going to do. I thought that's what he said. He said, with respect to Ms. Lachino, that we had gone to her and mentioned through, and it's a little ambiguous, and this is what he said his notes said. It was a little ambiguous whether he was a party to this conversation. He said through his boss, David Landersman, and that they had told her they had another use for the money. Right. Okay, that's the money. And then with respect to Mr. Martinage, he indicated that he had kept him up to date as to the status of the requirements. But nothing, nothing in that testimony said they gave me permission to use this money to purchase weapons. Specifically. Correct. But he did say he met with Martinage and advised Martinage that the funds would be used to purchase the suppressors. Correct. I don't know that he said, maybe, Your Honor, that may be the case. Well, I'm going to let the other side clarify that. I don't know that he said that the money would be used to purchase the suppressors because Mr. Martinage was not very, Mr. Martinage was not involved as much in the money. Mr. Martinage was the other Mr. Landersman's boss? Correct. That's what I thought. And they went to Mr. Martinage. He was a higher-up. Correct. To ask if they could go to Mr. Aquino to get a budget supplement at the end of the year. But I don't recall, and the government's recollection is not that they went to Mr. Martinage and said, can we use this money for suppressors? I don't recall that in the record. I may be mistaken. But, Your Honor, the fact remains that this money could not have been used for suppressors. And it was used for suppressors. There was no authorization for the use of the money. There was no requirement for the suppressors themselves. And there were a bunch of lies that were documented, like the names that fell out in California. Correct. Telephone number, the name of the company. That's correct. It was a big mess. But now let me ask you something. Sure. If you get a general verdict of guilty, then we, I just said it goes to standard of review, we're obliged to review the evidence in the light most favorable to the government. Correct. If there's a jury verdict of guilty, that's what we do. Correct. If you got a bench trial, you people do all these bench trials, if you got a bench trial and the judge says guilty and then sits down and writes a 40-page explanation of it, does that impeach the favorable inferences that may be drawn from that evidence? Or do we still have to draw the inferences, the facts, in the light most favorable to the government? We think you still have to draw the inferences and perhaps even give it a strong inference because it's a bench trial. Well, but what if the, so if the judge is incorrect somewhere in the written explanation, we set that aside to what the evidence really is? The question becomes is that inconsistency material? What if it is? If it's material, then it may be a problem in that instance. It might be a problem. What do we do with it? That's what he's asking. Well, if there's, I'll ask it. If there's a material error in the written order, what do we do with the presumption or the inference that the government gets the facts read in their favor after a guilty verdict? What happens then? Then you'd have to, in that case, it would be a question of whether it was a harmless error. Whether it was material. Whether it was material. Has this been briefed? No, it hasn't. I don't know whether it has anything to do with this or not. But in these bench trials, if a judge tries to explain what, how they got there, the government's potentially worse off than getting a jury trial, or if just the judge says after the bench trial, I find you guilty, and doesn't say anything else. If it's sufficient, I find you guilty. Then you, the government, you're entitled to come up here and say, you have to take all the evidence in the light and most favorable to the government because we got a guilty verdict. That's correct, Your Honor. We would have been better off without it. But here, Judge Brinkman wrote down a 40-page verdict explaining it all. Anyway, and maybe she impeached herself some. On certain points, I mean, she acknowledged the mistake she made. It worked to our detriment in the sense that Objective 2 fell out of the, as a result of the mistake she made in the written verdict, we lost the second objective of the multi-object conspiracy with respect to Mr. Hall. But she didn't need it anyway. She didn't need it, but it still worked. All you had to do was prove an objective. That's right. That's correct. And an offense. You had to prove that there was an offense against the United States that wasn't an objective of the conspiracy. Once again, you claim harmless error. This time it's just was harmless against you. Correct. Is that right? Correct. That's correct. I'll tell you, I think Judge King points out then, he's making a claim that every time the government says they're a harmless, it's in front of it, even if it hurts the government. It's harmless. With respect to, and just another procedural point, it is our position that the Landesman trial started on October 28th. October what? 28th. It didn't start on the 21st? With the opening statement, Your Honor. Well, the record would ought to be. I'm sorry. He says it started on the 21st. That's what the record said. He says it started on the 21st. They interjected that into the middle of the other trial. Well, what happened was to be official. Were you the prosecutor? I was the prosecutor. Well, you ought to know, too. He ought to know, too. What happened was after defense counsel had requested a severance and received the severance a month before trial, that we'd already sent out subpoenas, two weeks later there was a change of heart with respect to Mr. Hall testifying, at which time the defense did say, Your Honor, if you wish. But at this point we sent out another set of subpoenas. And so now we're two weeks out and the judge says I'm just going to leave it the way it is. The judge, at the conclusion of the first trial, I think stated that the next trial will not now start on, it was supposed to originally start maybe on the 27th. She pushed it back a date to the 28th. In the government's view, a trial starts with the opening statement. What she did do was she agreed because of efficiency to allow them, allow Mr. Landesman's attorney to participate in the examination of one or two witnesses so that those witnesses didn't have to return the next one. So the government's theory is you had testimony in a trial before a trial began? Much like you would in a deposition. But I don't think it makes any difference either. I'd say you realize this case, y'all can't even agree when the trial started. How can we let them get away with getting a severance anyway? That's correct, Your Honor. Y'all do that in bench trials much? Grand severances in conspiracy cases that are going to be bench tried? No, Your Honor. The fact that it's a bench trial is less reason for a severance. Correct. You get severances when you've got a jury that you're afraid of getting, that the defendants might be unfair to the way it's handled. That's what the severance is normally for. But here you've got a severance for a bench trial. Yes. Of two conspirators charged in the same count. Correct, Your Honor. It's rare that you all, but it's also rare that you have a defendant standing before a judge to say, I plan on testifying. And then later say, I changed my mind, I'm not testifying. Maybe they're working the system a little bit. Excuse me, Your Honor? Maybe they're working the system a little bit. I mean, I assume they did it all good faith. But things happen. Correct. You don't anticipate it. And, Your Honor, quickly, just with respect to the $5,000 value of the suppressors, I mean there were so many other false representations in this case, and Your Honor's made reference to them. Mr. Hall represented in an October 22nd email that AME's product is the first that incorporates unique design that significantly reduces the decibel ratings to near background noise levels. There was simply no basis to believe that, and it turned out not to be true. The email also contained false statements. What kind of sentences did these two people get? I think it was a month. Not much. Six months and a month. I don't even think it was six months. Not much. They're on bond pending appeal, right? Very low, well below the guidelines. And they're on bond awaiting the appeal. They're on bond. But do you know what the guidelines were? They were higher than that. They were somewhere between three and four years. They got below guideline sentences. Yeah, well below guideline sentences, Your Honor. And she said why? Why is that so? They had no criminal record. I can't recall all the things she stated, but I think that the – Well, that's taken into account with the guidelines, isn't it? It is taken into account with the guidelines. It's already been taken into account. That is exactly right. Can you all agree on what day they were sentenced? Just briefly, Your Honor. But there were other false statements by both defendants, and those false statements would be the basis for both the conspiracy to commit mail fraud in this case. Mr. Hall represented that all technology was developed and owned exclusively by AME. Patent and trademark records indicated that neither AME nor Mark Landisman had even applied for exclusive rights for any of these products. Your cleanest object of the conspiracy was the mail fraud. Excuse me? Your cleanest object. The cleanest one to be proven here would be conspiracy to commit mail fraud with all those fraudulent – That's correct, Your Honor. But we believe that mailing unregistered firearms from – Well, that's part of it, too. That's violation, too. But you could have said fraud against the government, commit fraud against conspiracy to commit fraud against the government. That's true, Your Honor. They sold a million and a half dollars. And there were other statements by – You had plenty of options for objects. We did, Your Honor. That's so true, and we believe we proved those objects. No, I mean you had others that you didn't charge. That's correct. Which you may have proved. That's very true, Your Honor. That's very true. Just briefly, Mr. Landisman also made misrepresentations in the course of this procurement indicating that he would not subcontract any services required by the contract. We know, in fact, that he subcontracted this through Juan Carlos Robles and his business ICANN. In fact, during much of the negotiations, AME was in bankruptcy until October 29th of 2012. He also stated, Mr. Landisman also represented to CACI that he could not start without the initial check of $828,875. Mr. Robles, who machined these parts, said he spent $2,000 for the materials and was paid less than $8,000. So the whole project was done for under $10,000. They did it all for $10,000 and got a million and a half. Correct. And when CACI raised questions about the terms of payment, 50 percent up front, 50 percent at the end, Mr. Hall represented that there would be test trials, inspection, et cetera. That never happened. He also stated that the Navy, he represented that the Navy would take on or take the risk, and he did not have authority to do that, of any problems with the contract. Nothing further from the government, Your Honor. Thank you. Thank you very much, sir. Now, Mr. Sears, you can say something. I did, Your Honor. Five minutes. I just want to start off by addressing a comment that Judge King made when Mr. Sitterberg was talking, which was a good point, which is things change at trial. You need to adjust on the fly. Sometimes witnesses say things you don't expect, but I can't remember any time in my career that the rules changed during trial. And in this case, Your Honor, the rules changed. The way the judge was going to apply evidence, the findings the judge made pretrial, that changed after the trial was over. And that's the issue we're raising here. And I think you can tell kind of from both sides during this argument that the record in this case is very confusing. The trial judge made different rulings at different times. She told us at one point pretrial that if I were you, I wouldn't waste my time being generic. Do you have specific things you want to focus on? Well, the first thing I would focus on is the sanction, Your Honor, which we've beat to death at this point. So I'll move on to the next one. But at one point, Your Honor, in the pretrial lead up, the court told us that if you have a witness who comes in here and says that they told Mr. Hall that these suppressors were needed, you just got yourself an acquittal. Well, we had that witness by stipulation. The government agreed to it. Didn't get us anywhere at trial at the end. She also advised us that- Which witness was this? Sterling Gill, Your Honor. This was a stipulation that the court either didn't- Had been told- Had told Lee Hall that- That's what I mean, that Hall had been told by Gill that- Correct, correct. And really that was the heart of our case, Your Honor. It was a good faith defense. So you were surprised when the court went, there's no evidence. The court said there was no evidence that anyone ever told Lee Hall that these suppressors, was unfulfilled. And there was a stipulation entered during the trial that said exactly that. And that we didn't learn that until the memorandum opinion. I do want to touch briefly on the issue about the inferences that were made from Mr. Hall's notes. I think this got fleshed out a little bit that at the oral hearing when she announced the sanction, she would not dismiss the indictment because she didn't find bad faith. She found it to be incompetence. But what she said was, I'm going to give him inferences and the government's correct and the court is correct for pointing out that at that hearing- You're talking about the notes? The notes, Your Honor. She wanted to dismiss the indictment because of the notes? Because we believed under Youngblood that it was- We don't dismiss indictments hardly for anything. Well, that's true. We ask a lot, but we barely ever get it, Your Honor. That's another motion you make all the time. You never get granted. It hinges on bad faith, Your Honor. You thought the case, that if you could show good faith, you couldn't lose the case. That's what I believed, Your Honor. You thought the notes would show good faith, and the government had destroyed the notes, and so when you raised that with the judge and she goes, I'm going to draw inferences in your favor. Yes, yes. And I would point out- That's an evidentiary ruling. What you wanted was the indictment turned out. I don't believe it was an evidentiary ruling, Your Honor. I believe it was a sanction. It was a sanction for- Well, it was a sanction, whatever you want to call it. But you wanted the indictment dismissed. Correct. Is what you wanted, and that's what I say. You don't normally get that in a criminal case. Rarely. I mean, the Supreme Court said if you got an indictment that's valid on his faith, the public's entitled to a trial on the merits of it. Correct. Period. That's what the law is. We had to show bad faith on the part of the Navy for destroying those notes. Maybe stronger than that. We fell short. But you don't answer this question, though. You thought what? Did you think that, has the government's position been if you'd operated, if your client had operated in good faith, thought that in good faith he was going through with this contract, that that would be a defense and he would be free of charges? I don't know that the government would believe that, but I believe that. I believe that- Well, then, this is fine what you believe, but you don't get the indictment dismissed on what you believe. Well, I didn't ask for it to be- Well, God's always, I mean, good faith is always a defense to a fraud case, pretty much. Right. But you've got to prove it. The evidence has got to appear from the evidence. Correct. And maybe I- You don't get dismissal of charges. And it may be that I'm confusing the issues. I'm talking about- The evidence comes in. When I was referring to bad faith, I was referring to the pretrial hearing where we took evidence on why the notes were destroyed. And it was at that hearing- You doubled it over. You doubled it over. Yes. But I thought you did confuse the two, I think, in your answer, because you didn't have to show anything. You didn't have to show as far as the burden of proof in trial. Correct. But was it your understanding that good faith, if shown as a matter of law there was good faith, that the indictment would have to be dismissed? Not dismissed, but that we'd be found not guilty. You'd have to be found not guilty? Mr. Hall, you'd have to be found not guilty if that defense was accepted. And I would point out to the good faith defense that Mr. Hall believed this was authorized and this was approved, that contrary to the government's representations earlier in their argument, Mr. Hall testified that his notes would have reflected a conversation with Bob Martinage, number two in the Navy at that time, who testified at trial that the funds would be used to purchase suppressors and that he provided Mr. Martinage with a brief explanation of his efforts to protect the identity of the manufacturer from the end user. So that was a very important issue, and that was a very important inference for the court to take. And orally, the court said at the time she gave the verdict orally that, you know, I took that inference into play. I found that maybe Mr. Martinage knew about this and maybe he said, yeah, it's okay, but I don't think that's enough to go and get a contract. You need more than that. But that's not in the memorandum opinion. And so we've got sometimes – You've got a red light on. I apologize, Your Honor. Thank you. We appreciate it very much. Thank you, Your Honor. We'll see you later. Mr. Shedrenberg. Thank you, Your Honors, again. I just want to pick up on a previous point that was made about where there's a bench trial ruling where facts are – factual determinations are made that you wouldn't have with a jury finding. With a jury finding, you just have the word guilty. Go to the argument on that point. A box is checked, yes. And so I think the actual language is could a hypothetical rational fact finder have adopted certain facts? And that has to be the standard for obvious reasons, where you have a judge who's specifically gone on record and said, these are the facts that I found, and those facts are facts that do work against the government in this instance. The court can't ignore those and say, well, theoretically, she could have found something different. And to this point, I know we were concerned, I'll tell you, that after we made this motion and we – Don't editorialize so much. Go right to the point. Our concern – I'll say this. We thought Brinkman might come back and say, you know what? I take your point. You make a good point about the sanction. I am now finding that suppressors were worth $5,000, and I still find nonetheless that there are evidences there to convict. She didn't do that. To her credit, Brinkman, as we all know, is a very conscientious judge. She said, I'm not taking away the sanction. I'm saying that they were not worth $5,000. She specifically went on and said, I'm not going to do that. I think the court has to – So what do we do with that, though? I think the court has to accept that as a fact that the judge made it. You say there would be written opinion control. Well, there was a – I think both opinions control, Your Honor. No, no, yeah. The question is, but if you have the verdict and then you have a statement, an order explaining it, what do you do with what appears to be a material inconsistency? What do you do then? What does that do with the normal state that when you get a – the party that wins, they get all the inferences in their favor? What does that do to that inference? I think, in this case, that because where the judge makes specific facts, whether they come, in this case, in the written opinion or a little supplemental opinion, which augmented – Right, right. The court must credit those as the judge's rulings and facts, regardless of the fact that a different theoretical hypothetical fact finder who wasn't this fact finder could have potentially – Because you get it. You think because you get it in a jury trial, you're saying that's just a legal principle, that a presumption, you take it that way because you don't know. Exactly. But if you actually know, that presumption goes away and you deal with what you actually know. That's exactly right, Your Honor. And you've got your law that supports you on that? I'm sorry? Maybe right. You got any cases that say that, or you got a case you can cite? I do not. That Judge Shedd wrote, or I wrote, or Judge Lacker wrote? I did not. Are you hoping for some? Well, I'm sure your clerks will be able to find some. I suspect that's true. No, I mean, are you hoping that you will see some in order? Yes, yes. I'm hoping. I'll probably go look that up after this hearing. So with respect to also, I just wanted to briefly address the issue of the notes and the inference that was drawn. The inference that was drawn, as she went on the record specifically, she had withdrawn as to one particular comment, which is that he had this meeting with Martinage and he aired what he wanted to do with Martinage. But Lee Hall said a lot of other stuff. I mean, he talked about the contract from day one all through the end of it. And she didn't draw inferences as to the rest of it, nor did she admit his testimony. Because his testimony went beyond just there was a note that said this. In his testimony, which he didn't admit, he elaborated on it. Well, that's just an admissibility issue. It's under a lighter standard, but we still submit it's error. And I just wanted to clarify that even though an inference was drawn, it wasn't drawn in such a way that would obviate the error as to the remaining things. Could it be that there are clear errors made in this case? The government doesn't say that. But when you walk them through it, it looks like they think errors were made too. They just don't really matter. Yes, and we all expected coming in here that harmless error will figure very prominently in the court's opinion of the analysis of whether there is. And it's justified by the precedent. That's what the law is. That is the law. Errors don't get you relief. You've got to be a reversible error. Absolutely, Your Honor. And we believe, for the reasons I opened with, that the error certainly as to Mark Landers meant at a minimum was highly prejudicial, particularly in light of what the judge said. The Supreme Court said that defendants are not entitled to a perfect trial. They're entitled to a fair trial. But for constitutional error, government has a burden to show harmless error beyond a reason to ask. That's a very heavy burden to meet. And we believe essentially as to Mark Landers meant given the thinness of the evidence. And the constitutional error is? Is the due process violation and giving a sanction and then, you know, at the very end of trial saying actually there was a secret condition attached to that sanction. No, no, no. But that's no constitutional right. Secret conditions attached. It's what? That he didn't get a fair hearing? That's correct. That it was a due process violation. Fair hearing in that he was limited in how he could produce evidence to have a fair hearing. Correct. And as I've noted. Is that the problem of the effective assistance of counsel? You don't claim a Sixth Amendment claim. Well, it wasn't raised here. I believe effective assistance is typically raised on habeas. And if we don't prevail here, I expect that that will be 255 down the road. Thank you, Your Honor. Well, thank you.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker